I am here on behalf of Mr. Dinh. Your Honor, I would begin by, I'm sure the court's had an opportunity to see the facts of this situation, and it is a rather unique situation that I feel won't come before the court very often. You've got a really intricate sentencing issue here. Let me ask you a couple of questions that are on my mind. Yes, sir. One is, I wonder whether we can treat the error, assuming there is error, as invited, because the defense suggested 18 months, and that is in excess of the 6 to 12 months. I believe, Your Honor, in order to do that, you would have to approve what is a sentence that is outside the law, in effect, an illegal sentence. Not necessarily, not if it's invited. Well, Your Honor, that's a, I mean, that's, that is, I don't believe you can treat it as invited, because then you're back here on a, possibly a competency counsel issue. One of the things that's striking about this case is that, is that no one seemed to, to, to, to focus on the issues that we've raised in the brief. I mean, defense counsels recommended 18 months, the prosecutor recommended 5-year statutory. Nobody caught it. Nobody in the courtroom. Let me ask you about another thing that strikes me they didn't catch. Yes, Your Honor. I couldn't see where the sentence available under the guidelines on the first run through was 6 to 12 months. That was based on stealing $6,000, but under fine, the relevant conduct would add up to $1.5 million. Right. And the judge would be required, under the relevant conduct guidelines and our en banc decision and fine, to sentence him the first time through for $1.5 million, not $6,000. So I don't really understand why we're looking at 6 to 12 months. Well, we're looking at that because that's what he was sentenced under. Had the court. No, it was a mistake. Right, right. Under the $1.5 million, the range would have still been 33 to 41 months, still less than Mr. Dean received. I mean, in any event, he is outside the scope. And to be candid with the court, Mr. Dean's release date is in 2005, May of 2005. So as a practical matter, whether it's 6 to 12 or whether it's 33 to 41, if it's remanded and they're asked to re-sentencing, based on the guidelines available at the time, he still is released. Well, if the judge had articulated grounds for upward departure at the times of sentencing, you would have had no objection, would you? I mean, you would have objected, but you would have no legitimate objection at that time. I believe, Your Honor, that the law at the time, and this is pre the 1994 statute, did not allow the court to go into the statutory sentencing, the five-year run. The court would have been limited to the guidelines that were available at the time. All the case law tracking, I think we've cited in the brief, all the case law tracking up until that amendment in 1994, September 13, 1994, and Dean predates that, says that you are guideline restricted in sentencing on a probation revocation. And of course, that's an issue that wasn't addressed, and the reason I say it's unique is it won't come back because the law has since been changed. But at that time, no one was available, was able to, no case law, went to the statutory sentence. You simply brought the individual back. I mean, when you look at the cases that are on point, like Redmond, where the defendant was eligible at 33 to 41 months, when he came back, the court upheld that sentence. The district court gave Mr. Redmond 33 months. The court upheld that sentence because that was in the range available at the time he was originally sentenced. And that's what the language said, that's what the statute said, that's what the cases all say. So, I don't believe that they could have, that the court could have gone to the statute and given him 60 months or five years. I thought the issue was whether or not at the time of the initial sentencing, there were grounds that could have been applied, although the judges did not. And then on revocation, if there were grounds, the district court judge did not articulate reasons here, and that's clear. But after the revocation, when it goes back, if there was a possibility for upward adjustment at the time of sentencing, and the judge articulated the reasons, wouldn't this be appropriate? The five-year sentence still would not be appropriate. But, as we've argued in our brief for the 12 months, and as Judge Kleinfeld has pointed out, the, if he had been sentenced on, appropriately on $1.5 million, that would have been in a 33 to 41-month range, that is an upward departure. And the judge would have stated the- Wait, that's not a departure, that's an adjustment. I'm sorry, it's an upward, why would that- It's an adjustment, not a departure. Okay. Why is that? Why? Because the relevant conduct just suggests the number of points. It isn't a departure out of the points. Well, that's true, Your Honor, I would, I would accept that. But in any event, that would have been available to the judge. The 33 to 41-month sentence would have been available to the judge. Not the five years. But not the five years. The policy, the steps that the judge would have gone through would have been looking at the policy statement and then looking at the guidelines that were available at the time. And, and pre-1994, pre-that September 13th date, the statutory penalties were not available on a probation revocation. I could find no case in the Ninth Circuit or any place else that, for that matter, that would apply, allow the statutory penalties to be applied before that amendment to the statute. And the amendment was done specifically, and the legislative history that you read about it was done specifically to address what Congress saw as that problem in the statute when, when, when people were revoked either off probation or off supervised release. Your Honor, I will, I will, I say is that if you were to win, it's hard for you to avoid the conclusion that the remand would say that the judge is limited to the sentence available at the time of the original sentencing, but the sentence available would include relevant conduct and would be 33 to 41 months. I believe so, Your Honor. You're stuck with the 33 to 41 months. I think, I think I'm stuck with that, and I concede that point. I would not try to argue that point. To the contrary. I will, I will reserve the remaining time if it pleases the Court. Thank you, counsel. Well, it looks like a lot of mistakes were made because the government was as eager to give this fellow a break as the defense. I think that's correct, Your Honor. Good morning. My name is Mark Chutko for the government. This is an odd procedural case, and I do agree with co-counsel that I don't know, aside from this impact on this particular defendant, what kind of impact it would have as precedent on any other cases. But I also agree that he has articulated the right issue in this case. What does the term available mean at the time of the original sentencing? But we do disagree with him that there is no precedent on this case. The United States v. White, a 1991 decision cited in the government's brief, says specifically at page 286 and 287, the district court is not absolutely limited by Section 3565B's language to the original sentencing range, provided that facts warranting the departure are available at the initial sentencing. Courts may revisit those facts, and departure-related facts are by definition available at the initial sentencing. This case was argued by the appellant that it should not be considered by the court because the Chapter 7 policy statement was not in effect at the time of the original sentencing. However, that shouldn't make a difference because what the court is really looking at is the statutory revocation statute, pre-1994. And that's what this particular decision is looking into. This goes back to the question I was asking counsel. I have the White case. It says sentencing courts are constrained by the offense level of the district category and sentencing rates determined during the initial sentencing. However, a district court is not absolutely limited by Section 3565B's language to the original sentencing range. The court can depart from the original range, and here I'm talking about departures, provided that facts warranting departure were available at the initial sentencing. That's correct, Your Honor. That's an adjustment. If there were facts warranting departure. That is correct. And at the revocation proceeding, Judge Rothstein did use the phrase that she was doing an upward departure. Granted, there's not a model of clarity as to why, but, no, actually, she did say a few things, Your Honor. Specifically, if I can get to it, she – well, in 2001, she said that she had doubts regarding her sentencing in 1999 because the crime was so serious. There was so much money involved. There was so much fraud and deception that the defendant was so involved in this fraud scheme and that it went to the heart of the justice system. I would argue that these factors that she's articulating, first of all, go to the initial sentencing itself, but also go to whether she could have departed upward. And that can be found at the excerpts of record, page 26, or the government's excerpts at 47. She also said at the 2001 sentencing that she had made a mistake, that she should have given him substantial jail time at that initial hearing. If you go – If I understand White correctly, it says that at the revocation hearing, the judge can consider the conduct while on probation to determine whether to depart. But the departure factors have to have been before the court at the time of the original sentencing. That is correct. Though, as post-probation conduct, it's kind of an on-off switch, but not a how much. Looking at White in connection with some of the subsequent cases, the rule that I believe is established is that the probationary conduct can be used to look within the range that was available to the judge at the time of the initial sentencing. But you still have to go to the initial sentencing and the facts that were available at the initial sentencing to determine what that range is. And the government's argument in this case is that she did have the facts available to her back in 1999 when she made that decision to upwardly depart. Once she has that ability to upwardly depart, there is no sentencing guideline ranges, and she has the ability to go all the way to the statutory maximum. And then your review would be whether that was reasonable and whether she abused her discretion in going up to the statutory maximum of 5 years. Looking at some of the other cases, the same question for me as Judge Nelson raised, when you get it to that stage, the way the judge articulated it, it's a little hard to sort out when she's focusing on factors at the time of the original sentencing, because she's mostly talking about his conduct after the original sentencing. Well, I think, actually, if you take a look at the supplemental excerpts of record, page 47, and then also the excerpts of record 26, she specifically, she's not talking about the probationary conduct now. She's saying the crimes at the initial sentencing were so serious that the money involved was so high. Now, she's talking about the fraud scheme, the one with the staged car accidents and the fraudulent medical claims.  And, again, she's not talking about how he defrauded his friends afterwards, after the sentencing, but she's talking about the medical claims that were submitted to insurance companies. She said that he was so intimately involved in this fraud scheme and that it went to the heart of the justice system. All of that relates to the original sentencing itself. If you look at also the 1999 sentencing, when she indicated at that time that she had some doubts about whether she should go along with the government recommendation of probation. Again, and this is at the supplemental excerpts of record, pages 6 and 7, she said, in 1999, this is a serious crime. There was fraud on many segments of society. It strikes at the heart and the fabric of the social system, and it would ordinarily justify jail time. Also, at that initial sentencing hearing, the probation office, in its pre-sentence report, said that they felt that the government's recommendation was too lenient because of the extent of the fraud. So there was enough in the record for her to basically be – she was cautious about it, and I think that at the 2001 sentencing hearing, she expressed remorse that some of the assurances that this particular defendant made at that sentencing did not come through. And she maybe went against some of her instincts in allowing a probationary sentence. It would have been helpful if she had explicated why she was inclined toward upward departure. And certainly, if we were to remand, that's what we would ask her to do. If that was the direction that you were heading, I think she could probably provide more specificity, but there is certainly enough in the record that you could look to see what her mindset was back in 1999. And again, upon revocation, she does talk about the fact that after his sentencing, he did a lot of things, defrauded people, took their life savings. So whether she's mixing apples and oranges there. They are combined together. And I – to be honest, at this moment, I can't tell you when she uses the term upward departure how she connected it up. But she said enough at that sentencing that made her show that she was looking at what she had done before, and it really wasn't the appropriate sentence back in 1999. Partly it was because the cell phone rang in the middle of her articulation. That's right. It wasn't one of you. The only other thing I would say is just to distinguish a couple of the cases that the appellant has relied upon. United States v. Garcia, which is a more recent case, does not stand for the precedent that the district court is only permitted to look at the policy statements and not the guideline range. In that case on page 1164, they say that the sentence in excess – I'm sorry. So long as the district court considers the policy statements, they are free to impose any sentence that is below the statutory maximum. The fact that they say below the statutory maximum means that they're saying that they're not only free to ignore the policy statement range but also the sentencing guideline range so long as the information is available to them to allow her to do that. U.S. v. Tadeo says a similar sort of thing. The appellant has cited United States v. Redmond, which I believe is Your Honor's opinion from 1995. And that was merely an affirmance of a district court decision to sentence within a guideline range. They didn't have to address the situation of whether they should go above the guideline range. So they simply – you can't use that as precedent to say that you can't. It's not helpful here. No, it isn't. And, in fact, there is a sentence in there that says Congress gave the district court discretion to impose any – and the word any is emphasized – sentence that they could have imposed at the original sentencing. That would be the government's position in this case. I have nothing else unless – if you have any other questions. Thank you, Counsel.  Well, thank you. Thank you, Your Honor. May it please the Court. One of the things that is clear from the record when you read the supplement that's going on is everybody seems very happy with this guy in 1999. They're cheerful. I mean, he's worked with them for six long years, and he's gotten them. Goodness knows how many convictions. And everybody's patting him on the back, and they go to great lengths to let him withdraw from a previous plea. Now, he had pled previously to the $1.5 million issues. And they let him withdraw from that plea so that he would not be deported. The law changed in the intervening period while he was cooperating, and had he entered the plea or had he been stuck with the plea originally entered, he would have been deported at the end of that plea. Now, when you come back to whether this amendment did anything at all, I think if you weren't stuck with the language, or if we weren't stuck with the language that says if a probation sentence was the result of a downward departure based on a government motion under 5K1.1, a government motion, the court would be bound by the original guideline. That's what binds the court. Otherwise, there would be no need for that 1994 amendment. That 1994 amendment came so that the court, the district courts could now use the statutory sentences to impose more stringent penalties on them. Mr. Dean just happens to fall in a gap. Had Mr. Dean's conduct been after September 13, 1994, we wouldn't be here arguing this because the court could have done what the court did. It's pre that date. And I think in keeping in mind that Statute 3565A2 was amended, and it was amended specifically to allow this. And I think in reading the comments of Senator Thurman and others who were on that Senate Judiciary Committee in the House notes, it's very specific in what it's saying. It's saying here's the opportunity now to go to the statutory sentences. You know, I'm running out of time, but let me just say I believe that the White case doesn't apply here because it is pre the Chapter 7 amendments and rules, and then the Park case is afterwards. And that's why we don't believe those two cases apply. Redmond is here, and we adopted language from it that we believe helps. And with that, thank you for the time and consideration. Thank you, counsel. United States v. Ginn is submitted. United States v. Pangelanen is submitted. Howard v. United States. Thank you.
judges: Dw Nelson, Kleinfeld, Fisher